FILED
2015 Apr-21  PM 12:02
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **LESLIE ATKINS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Civil Action Number |
| | ) | **5:13-cv-1180-AKK** |
| **JOHN M. MCHUGH,** | ) | |
| **Secretary of the Army,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

Leslie Atkins, a 54 year old[1] African-American who has worked for the United States Department of the Army for over twenty years, claims that her supervisors denied her promotions and training, and reassigned her to a less desirable job because of her race and age. Doc. 15. Accordingly, Atkins pursues claims against the Secretary of the Army, John McHugh, for alleged violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*., and the Age Discrimination in Employment Act ("ADEA"), 42 U.S.C. 12101 *et seq.* Doc. 15. The Secretary moved for summary judgment, doc. 28, which is due to be granted for the reasons below.

---

[1] This is Atkins's age as of the date she filed a charge with the Equal Employment Opportunity Commission ("EEOC"). *See* doc. 29-15 at 1.

## I. STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." To support a summary judgment motion, the parties must cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c). Moreover, "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*,

398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable

inferences must be drawn in the non-moving party's favor). However, "mere

conclusions and unsupported factual allegations are legally insufficient to defeat a

summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir.

2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560,

1563 (11th Cir. 1989)). Furthermore, "[a] mere 'scintilla' of evidence supporting

the opposing party's position will not suffice; there must be enough of a showing

that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573,

1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II. FACTUAL BACKGROUND[2]

Atkins's allegations center around her experiences while working as an

administrative assistant in the Department of Public Works ("DPW") of the U.S.

Army Garrison at Redstone Arsenal ("Redstone"). Atkins joined Redstone in 1995

as a secretary for the Fox Army Health Center, and in 2003 transferred to DPW to

---

[2] Atkins sought three extensions of the deadline to respond to the Secretary's motion for summary judgment. *See* docs. 31, 33, 35. The court granted the first two, *see* docs. 32, 34, and denied the third one, which Atkins filed after the deadline for her responsive brief, *see* doc. 41. Without obtaining leave from the court (which the court would have denied) Atkins nonetheless submitted a response on March 2, 2015—a week after the extended deadline the court afforded her. *See* docs. 36-40. To make matters worse, Atkins completely ignored the court's guidelines and limitations and separated her brief into two separate documents, which totaled fifty pages collectively—twenty pages more than the court's page limit. *See* docs. 36, 37. For filing her brief after the twice extended deadline, for exceeding the page limits, and for violating the court's submission guidelines, Atkins's responses in opposition to the Secretary's motion for summary judgment are **STRICKEN**.

Consequently, because Atkins failed to file a timely response, the only evidence before the court is that which Defendant has submitted in support of its motion. Despite the fact that the motion is unopposed, the court has carefully reviewed all record evidence, resolved all inferences in favor of Atkins, and considered the merits of the motion in reaching its decision. *See United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004) ("[T]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion."). Moreover, the court also read the stricken briefs Atkins filed to satisfy itself that nothing in them would justify a different result in this case.

work as an Office Automation Assistant. Doc. 29-3 at 14-15. Redstone categorized

the Office Automation Assistant Position as a "GS-5" grade level position. *Id.* In

October 2006, Atkins earned a promotion to a GS-6 Administrative Support

Assistant for the Engineering Division of DPW. *Id.* at 16. Atkins remained in that

position for five years, consistently earning pay raises until she reached the

maximum salary allowed for a GS-6 position. *Id.*

In 2011, Redstone received instructions from its Installation Management

Command to "reduce its overall size" by eliminating personnel in excess of the

"table distribution of allowances" ("TDA").[3] Docs. 29-6 at 24, 67; 29-8 at 12. In

compliance with this mandate, Redstone's Garrison Commander, Colonel John

Hamilton, eliminated many clerical positions which were "less critical" to the

organization—including Atkins's position at DPW. Doc. 29-8 at 17. As a result,

Colonel Hamilton transferred Atkins laterally with no loss in pay to a vacant GS-6

Administrative Support Assistant position with the Installation Safety Directorate

(the "Safety Office"). *See* docs. 29-3 at 18; 29-6 at 67; 29-8 at 18. Atkins contends,

however, that the Safety Office is "one of the lowest branches within" Redstone

and believes Colonel Hamilton transferred her because of her race and age. Doc.

29-3 at 40, 56.

Atkins also believes that Redstone denied her training because of her race

---

[3] The TDA is a budgeting document the Army publishes each fiscal year for each Army organization that
dictates "what resources [the organizations are] authorized in terms of people and equipment." Doc. 29-8 at 11.

and age throughout her tenure as a GS-6 employee, which presumably prevented her from qualifying for a promotion to a higher grade level. *Id*. at 26. Specifically, Atkins purportedly requested training from two supervisors—Joey Skinner and Keith Cook—but never received that training because her supervisors told her "they didn't have the funding." *Id*. at 26, 77. Meanwhile, Atkins's "general belief" is that Redstone offered training to four other Caucasian and/or younger employees,[4] who were then able to successfully compete for promotions. *Id*. at 30. According to Atkins, Redstone "preselected" these employees for those higher level positions by "fixing" the job announcements. *Id*.

The four employees Redstone trained and promoted purportedly because of their race and/or age are:

### 1.  Margaret Ingram

Margaret Ingram purportedly received training to help her advance from a GS-7 Environmental Protection Specialist Assistant position to a GS-9 Specialist Assistant position. *Id*. at 28-30. To support this contention, Atkins claims that she "just [feels] like" Ingram received training. *Id*. at 29.

---

[4] While Atkins identified two additional comparator employees (Allison Holt and Christina Fults) in her complaint, doc. 15 at 3-4, she clarified in her deposition that she is no longer alleging those employees are comparators, doc. 29-3 at 50. Likewise, in the stricken opposition she filed, she clarified that she is no longer alleging that Teresa Dial and Mary Kight are comparators. The court will nonetheless include Dial and Kight in its analysis.

## 2. Teresa Dail

Teresa Dail began working at Redstone in 2006 as a GS-7 Management Assistant. Doc. 29-10 at 4. Two years later, Dail successfully applied for a GS-9 Program Analyst Position. *Id.* Atkins generally believes that Redstone trained and preselected Dail for the GS-9 position because she "would have to get some on-the-job training or some training somewhere . . . [since] she doesn't have any education in order to qualify her for the [GS-9] job." Doc. 29-3 at 46. But, Atkins testified that she is "not sure" what on-the-job training Dail received. *Id*. at 45.

## 3. Mary Kight

Along the same lines, Atkins seemingly believes that Redstone chose Mary Kight—who is older than Atkins—for a GS-7 position based on discriminatory animus. *See id*. at 51-53; doc. 29-14 at 24.

## 4. Misty Taylor

Finally, Atkins takes issue with Redstone's decision to hire and promote Misty Taylor. Taylor joined DPW in June 2009 as a temporary summer hire while in college. Doc. 29-9 at 13. As her summer job came to its end, Taylor asked her supervisors if she could stay on as a "Co-Op" as part of the Student Career Experience Program ("SCEP"), *id*. at 28, a government program which allows "[s]tudents, who are U.S. citizens, [to] be noncompetitively converted from the [SCEP] to a term, career or career-conditional appointment" upon the satisfactory

completion of certain requirements, 5 C.F.R. § 213.3202(a) & (b)(10)-(11) (2001).[5]

In light of Taylor's "exceptional performance and . . . good [grade point average],"

her supervisors kept Taylor at DPW under the SCEP as a Student Trainee Program

Analyst in the Master Planning Division. Doc. 29-9 at 25, 28, 30. After Taylor

received an associate's degree in July 2010, her supervisors "non-competitively

converted" her through the SCEP to a career Management and Program Analyst in

a "developmental position." *Id*. at 48, 64. Taylor's developmental position was a

"5-7-9 grade," which means that she became a career employee with the goal of

advancing to a GS-9 position—but, first, she "would start out as a [GS-]5," and

upon completing certain duties to her supervisors' satisfaction, she would

ultimately "develop" into her target GS-9 grade. *Id*. at 48. In July 2011, after

Taylor had "worked in the GS-5 level for one year, proved exceptional service,

[and] performed all [her] duties as assigned," Taylor advanced to the GS-7 grade,

and then to the  GS-9 grade in July 2012. *Id*. at 65-66. Atkins takes issue with

Taylor's promotion because, as she describes in her EEOC complaint, Atkins "had

not been selected for any of the secretary/administrative assistant position jobs that

were open in DPW, but [the positions] were filled by young students/co-ops" like

Taylor. Doc. 29-15 at 2.

---

[5] Subsections (a) and (b) were revised effective July 20, 2012, and the SCEP is now the "Pathways Program." *See* Excepted Service, Career and Career-Conditional Employment; and Pathways Programs, 77 FR 28194-01.

## IV. ANALYSIS

The Secretary maintains that summary judgment is appropriate because: (a) Atkins's failure to promote claims are time barred; and (b) Atkins's reassignment to the Safety Office was not "an adverse employment action," or alternatively, that Atkins cannot rebut Redstone's legitimate reason for the reassignment. The court addresses these contentions in turn.

### A. Claims surrounding promotions of comparators are time barred

It is well-established that a plaintiff alleging discrimination based on "discrete acts such as . . . failure to promote," *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002), may not bring a Title VII or ADEA action unless the alleged discriminatory act "has been made the subject of a timely-filed [EEOC] charge," *Alexander v. Fulton Cnty., Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000) *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003) (Title VII); *see also Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1214 (11th Cir. 2001) (ADEA). Relevant here, because Alabama is a non-deferral state,[6] an EEOC charge is timely where the plaintiff files the charge "within 180 days

---

[6] "Deferral states" are "those states having a state law banning . . . discrimination in employment and a state entity authorized to grant or to seek relief for victims of such discrimination." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1100 n. 21 (11th Cir. 1996). While Alabama has a law prohibiting age discrimination, *see* ALA. CODE § 25-1-20, it does not have a state agency that is "an EEOC equivalent," *Jones v. Dillard's, Inc.*, 331 F.3d 1259, 1263 (11th Cir. 2003) *certified question answered sub nom. Byrd v. Dillard's, Inc.*, 892 So. 2d 342 (Ala. 2004). Therefore, the court "examines the timeliness of [an] ADEA claim in the context of the 180-day rule." *Id*.

after the allegedly discriminatory acts." *Hipp*, 252 F.3d at 1208 n. 2. Giving Atkins

the benefit of the doubt and using the December 19, 2011 date when she first

contacted an EEOC official—rather than the January 31, 2012 date she filed her

complaint, *see* doc. 29-15 at 2—any claims surrounding promotion decisions

occurring prior to June 22, 2011 are time barred. Unfortunately for Atkins, the

record is undisputed that the promotions of Ingram, Dail, Kight, and Taylor

occurred prior to June 22, 2011. Specifically, Redstone promoted Ingram in

February 2009, doc. 29-11 at 18, Dail in May 2008, April 2009, January 2010, and

October 2010, doc. 28-12 at 19, Kight in June 2009, doc. 29-14 at 24, and placed

Taylor in the developmental series position—through which she advanced to a GS-

7 and GS-9—in July 2010, doc. 29-9 at 48, 64. Consequently, to the extent Atkins

bases her action on these promotion decisions—or any training that Redstone

offered these employees to purportedly "preselect" them or "fix" them up for the

promotions[7]—the "acts are untimely filed and no longer actionable." *Morgan*, 536

U.S. at 115. Therefore, summary judgment is due with respect to the failure to

promote claims. *See Moses v. State Farm Ins.*, No. 2:14-CV-00146-MHH, 2015

WL 404264, at *2 (N.D. Ala. Jan. 29, 2015) (granting summary judgment on

---

[7] To the extent Atkins is basing her action on disparate treatment in the training she received as compared to other employees, the court notes that there is no evidence that any of these employees received any training that was denied to Atkins, nor any training to "preselect" them for promotions. In fact, Atkins admittedly bases her allegations on her "general belief" and testified that she is "not sure" what training the other employees received but that she "just feel[s] like" they received some training. *See* doc. 29-3 at 29-30, 45-46. Therefore, even if the actions were not time barred, Atkins's claims would fail at the *prima facie* level in light of the lack of any affirmative evidence that her "employer treated similarly situated employees . . . more favorably." *See Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)).

untimely Title VII and ADEA claims); *Goodridge v. Siemens Energy, Inc.*, No. 4:11-CV-240-VEH, 2013 WL 597782, at \*7 (N.D. Ala. Jan. 30, 2013) (same).

### B. The allegedly discriminatory reassignment to the Safety Office

Even assuming that Atkins's allegedly discriminatory reassignment is an adverse employment action, summary judgment is also due with respect to this claim because Atkins cannot establish that the Secretary's reason for the reassignment was pretext for discrimination. In fact, there is no evidence that Colonel Hamilton's decision to transfer Atkins "to promote a more effective and efficient operation of the Garrison [at Redstone]," doc. 29-4 at 38, was based on discriminatory animus, *see Clark v. Huntsville City Bd. of Educ.*, 717 F.2d 525, 529 (11th Cir. 1983) (to prove discrimination, a plaintiff "must convince the court that [defendant] operated . . . with a racially discriminatory motive, purpose, or animus"). As Colonel Hamilton explained, in downsizing to meet TDA requirements, he "had to decide based on . . . necessity . . . [and] priority where [Redstone] could afford to cut people," and which positions were "less critical" to the organization. Doc. 29-8 at 17. He concluded that Atkins's DPW position— along with many other administrative positions supporting lower-level managers— was less critical as compared to administrative positions supporting higher-level managers (such as Atkins's position in the Safety Office). *See id.* at 16-17. Based on this, Colonel Hamilton eliminated the DPW position and then worked to "get

[Atkins and other employees] to other positions that were authorized" by the TDA. *Id.* Because there is no evidence that Colonel Hamilton's decision was "pretext for accomplishing a racially discriminatory purpose,"[8] *Clark*, 717 F.2d at 529; *see also Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010) (to show pretext, a plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence"), the court concludes that summary judgment is appropriate.

## V. CONCLUSION

For the reasons above, the court will grant the Secretary's motion for summary judgment and dismiss this action with prejudice. The court will enter a separate order consistent with this opinion.

**DONE** the 21st day of April, 2015.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

---

[8] In the stricken brief, the crux of Atkins's argument on this issue is that there were vacant positions in other departments to which Colonel Hamilton could have transferred Atkins, and that Colonel Hamilton could have "curtailed temps, terms, [and] students" instead of eliminating Atkins's DPW position. Even if Atkins is correct, her arguments are unavailing because it is not the court's role to "act as a super personnel department that second-guesses employers' business judgments." *Alexander*, 207 F.3d at 1340 (citation and internal quotation marks omitted). This is especially relevant here where Colonel Hamilton transferred Atkins to a comparable position with no loss in pay. *See* docs. 29-6 at 67; 29-8 at 18.